1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    SOUTHERN DISTRICT OF CALIFORNIA
10
11   IN RE                              Case No.: 22cv71-JO-BGS
12   VALLADOID,                         **ORDER AFFIRMING THE**
13                                       **BANKRUPTCY COURT'S**
                                         **GRANT OF SUMMARY**
14                       Debtor.        **JUDGMENT**
15
16   GUILLERMO G. VALLADOID,
17
18                       Appellant,
                            v.
19   GEORGE DRAGAN AND KIRILL
20   DRAGAN,
21                      Appellees.
22
23       *Pro se* Appellant Guillermo G. Valladolid ("Valladolid")[1] filed an appeal from an
24   order of the Bankruptcy Court for the Southern District of California entering summary
25
26   _____
27
28       [1] Valladolid misspelled his last name as "Valladoid." when he filed this appeal.  The docket and
     the case caption, therefore, reflect his misspelled name.

                                         1
                                                                       22cv71-JO-BGS

judgment for Appellees George and Kirill Dragan on their dischargeability claim. Dkt. 4–5.[2] For the reasons stated below, the Court affirms.

## I. BACKGROUND

**A. The Underlying Fraud Action**

The trail of litigation leading to the current action stems from business dealings between Valladolid and the Dragans in 2016 and 2017. The Dragans first met Valladolid through a mutual friend who suggested Valladolid as an investment advisor. *George Dragan et al. v. William Valladolid et al.*, 2:18cv448-MWF-FFM (C.D. Cal.) (the "Fraud Action") Dkt. 101 at 2. In December 2016, Valladolid outlined an investment plan to the Dragans that required them to invest $1.2 million with Valladolid. *Id.* Valladolid promised that the $1.2 million would be used according to the proposed investment plan, and the Dragans wired the funds the following day.[3] *Id.* In March 2017, the Dragans invested an additional $950,000 with Valladolid, which the latter claimed would be used to purchase stock in a company called MegaData Web. *Id.* at 3. After the Dragans wired the $950,000, Valladolid sent documents reflecting the investment. *Id.* at 3–4.

The parties' business dealings began to unravel around August of 2017. At that time, Valladolid asked the Dragans for an additional $1.2 million but the Dragans requested proof of return on their prior investments. *Id.* at 4. In response, Valladolid wired $775,200 back to the Dragans, which he claimed was a partial repayment and distribution of profits on their prior investments. *Id.* Valladolid also provided the Dragans with a supposed escrow agreement showing that the Dragans' family-owned business had made a deposit and that the deposit would be forfeited unless the Dragans wired additional funds by October 31, 2017. *Id.* 4–5. After receiving this information, the Dragans did not wire the

---

[2] Unless otherwise noted, citations to "Dkt." refer to the docket of this case: *In re Valladoid*, 22cv71-JO-BGS.

[3] The Dragans also invested an additional $60,000 later in December, which Valladolid claimed was necessary to cover related transaction costs. Fraud Action Dkt. 101 at 2.

1    requested funds to Valladolid and instead contacted the escrow company to confirm
2    Valladolid's information. *Id.* at 5.

3         The Dragans subsequently discovered that Valladolid did not use any of their
4    investments as promised. With respect to the first investment of $1.2 million, Valladolid
5    did not invest the funds. *Id.* at 3. Instead, Valladolid used some of the funds to pay a third-
6    party, and the document Valladolid gave the Dragans reflecting the purported investment
7    was forged. *Id.* With respect to the $950,000 investment, Valladolid never sent any money
8    to MegaData, and again used some of the funds to pay a third-party. *Id.* at 4. The
9    documents Valladolid sent the Dragans purportedly showing the MegaData investment
10   were also forged. *Id.* at 4. Finally, the escrow agreement that Valladolid gave the Dragans
11   with respect to the investment he requested from them in August 2017 was similarly forged.
12   *Id.* at 5.

13        Based on the above events, the Dragans sued Valladolid for defrauding them. On
14   December 20, 2017, the Dragans filed a complaint against Valladolid in state court bringing
15   various fraud-related claims, and the case was removed to the United States District Court
16   for the Central District of California on January 18, 2018. *See* Fraud Action Dkt. 1. On
17   August 4, 2020, the Dragans moved for summary judgment against Valladolid on the
18   following claims: (1) fraud, (2) securities fraud under 15 U.S.C. § 78j(b), (3) breach of
19   fiduciary duty, and (4) accounting. Fraud Action Dkt. 69. In February 2021, the district
20   court granted the Dragan's motion for summary judgment, ruling that Valladolid had
21   committed the above fraudulent acts against the Dragans. Fraud Action Dkts. 101, 117.
22   On April 19, 2021, Valladolid appealed the district court's summary judgment decision.
23   Fraud Action Dkt. 118. On March 14, 2022, the Ninth Circuit affirmed the district court's
24   grant of summary judgment. Fraud Action Dkt. 123.

25   **B. The Underlying Bankruptcy Proceeding and Related Adversary Proceeding**

26        On October 8, 2019, while the Fraud Action in the district court was pending,
27   Valladolid filed for bankruptcy. Bankruptcy Petition, *In re Valladolid*, Case no. 19-06084-
28   LT7 (Bankr. S.D. Cal. Oct. 8, 2019). In the Bankruptcy Action, Valladolid sought to

22cv71-JO-BGS

1    liquidate his assets to pay creditors under Chapter 7 of Title 11 of the United States Code.

2    Bankruptcy Action Dkt. 1.   Because certain debts in bankruptcy proceedings are

3    dischargeable—that is, are no longer owed by the debtor—the Dragans sought to confirm

4    that Valladolid would still be required to pay them despite his bankruptcy.

5           Accordingly, on January 13, 2020, the Dragans initiated an adversary proceeding in

6    bankruptcy court[4] against Valladolid to obtain a ruling that the money Valladolid

7    fraudulently took from them was not dischargeable in bankruptcy.   *Dragan v. Valladolid*

8    (*In re Valladolid*, Case no. 20-90010-LT (Bankr. S.D. Cal. Jan. 13, 2020) ("Adversary

9    Proceeding").  Adversary Proceeding Dkt. 1.  Under § 523(a)(2)(A) of the United States

10   Bankruptcy Code, money obtained through fraud is non-dischargeable and must still be

11   repaid regardless of bankruptcy status.  11 U.S.C. § 523(a)(2)(A).  On August 31, 2021,

12   after the district court granted summary judgment to the Dragans on their fraud claims,

13   they moved for summary judgment on their dischargeability claim based on issue

14   preclusion.  Adversary Proceeding Dkts. 33–35.  The Dragans argued that they were

15   entitled to issue preclusion because the elements of their dischargeability claim under

16   § 523(a)(2)(A) (*i.e.*, whether funds had been obtained through fraud) were the same as the

17   elements of their fraud claim on which they had just prevailed in district court.[5] *See id.*

18          On October 19, 2021, the bankruptcy court granted summary judgment in the

19   Adversary Proceeding, ruling that the fraudulently obtained funds were not dischargeable

20   on issue preclusion grounds.  Adversary Proceeding Dkt. 48.  In reaching this conclusion,

21   the bankruptcy court first noted that a dischargeability claim under § 523(a)(2)(A) requires

22   that a plaintiff prove five elements: (1) the debtor's misrepresentation, (2) knowledge of

23   falsity, (3) intent and purpose of deceiving the creditor, (4) justifiable reliance by the

24

25   _____

26          [4] An adversary proceeding is a civil action in bankruptcy court for the purpose of ruling on an issue
     related to a bankruptcy case.

27          [5] The Dragans also moved for summary judgment on additional grounds of dischargeability under
     §§ 523(a)(4) and 523(a)(6), but the bankruptcy court granted their motion solely with respect to

28   § 523(a)(2)(A). *See* Adversary Proceeding Dkt. 48.

                                              4

1    creditor, and (5) proximate harm. *Id.* at 6; *Ghomeshi v. Sabban*, 600 F.3d 1219, 1222 (9th

2    Cir. 2010).   The bankruptcy court then compared the above elements to and determined

3    that they were the same as the elements of fraud determined by the district court in the

4    Fraud Action: "(1) misrepresentation;  (2) knowledge of falsity;  (3) intent to defraud;

5    (4) justifiable reliance; and (5) resulting damage." Adversary Proceeding Dkt. 48 at 6; *see*

6    *also* Fraud Action Dkt. 101.   In deciding that issue preclusion should apply in the

7    Adversary Proceeding, the bankruptcy court found that (1) the parties had a full and fair

8    opportunity to litigate the fraud issue in district court, (2) the issue was actually litigated in

9    the Fraud Action, (3) there was a final judgment, and (4) the parties in the Adversary

10   Proceeding were also parties in the Fraud Action. Adversary Proceeding Dkt. 48 at 6–11.

11   After finding that all of the elements of issue preclusion were met, the bankruptcy court in

12   the Adversary Proceeding entered summary judgment in favor of the Dragans.  *Id.*;

13   Adversary Proceeding Dkt. 54 (adopting tentative ruling, Dkt. 48).  Valladolid now appeals

14   that ruling.

## II. STANDARD OF REVIEW

16        The district court reviews *de novo* a bankruptcy court's decision to exclude a debt

17   from discharge under § 523. *In re Black*, 487 B.R. 202, 210 (9th Cir. BAP 2013).  This

18   Court will review *de novo* the bankruptcy court's determination that issue preclusion was

19   properly available in the context of the dischargeabilty claim before it. *See id.*  If so, this

20   Court will then review the bankruptcy court's decision to give issue-preclusive effect to

21   the decision in the Fraud Action for abuse of discretion. *Id.*

22        Throughout its analysis, this Court is mindful of its charge to "[view] the evidence

23   in the light most favorable to the party opposing the summary judgment . . . [and] determine

24   under a *de novo* standard whether there is no genuine issue of material fact, and whether

25   the moving party was entitled to judgment as a matter of law." *In re New England Fish*

26   *Co.*, 749 F.2d 1277, 1280 (9th Cir. 1984).

27   ///

28   ///

1

## III. DISCUSSION

2    **A. Valladolid's Appeal and Record**

3    Before addressing the merits of Valladolid's appeal, the Court briefly addresses the

4    deficiencies in the record on appeal. Valladolid, as debtor and Appellant, bears the burden

5    to provide an adequate record. *In re Kritt*, 190 B.R. 382, 387 (9th Cir. BAP 1995).

6    Valladolid was required to designate the items to be included in the record and to serve the

7    record within 14 days after the entry of final judgment. Fed. R. Bankr. P. 8009(a)(1).

8    Certain items, such as the order being appealed and any other rulings relevant to the appeal,

9    must be included in the record. Fed. R. Bankr. P. 8009(a)(4). Here, Valladolid filed an

10   appeal from the bankruptcy court's summary judgment decision but does not include that

11   order in the record. Dkt. 4 at 9. Nor does he include any orders or other documents from

12   the Fraud Action that formed the basis of the bankruptcy court's issue preclusion ruling.

13   Valladolid only designates a single document—a one-page minute order memorializing the

14   bankruptcy court's entry of final judgment on the Dragans' claim under § 523(a)(2)(A).

15   *See* Dkt. 6. Thus, Appellant has failed to provide an adequate record for this Court's

16   review.

17   Although these deficiencies in the record on appeal are sufficient to permit the Court

18   to summarily affirm the summary judgment order, the Court exercises its discretion to

19   consider the substance of Valladolid's appeal given his *pro se* status. *In re O'Brien*, 312

20   F.3d 1135, 1137 (9th Cir. 2002) ("the failure to present a sufficient record can itself serve

21   as a basis for summary affirmance"); *In re Brown*, 606 B.R. 40, 44 n.2 (9th Cir. BAP 2019)

22   (considering, *sua sponte*, underlying records on bankruptcy appeal). In the absence of an

23   appellate record, the Court will, on its own motion, take judicial notice of (1) the court

24   filings in the Adversary Proceeding; (2) the orders and briefs in the Fraud Action that

25   formed the basis of the bankruptcy court's summary judgment order on issue preclusion

26   grounds; and (3) as necessary, the court filings in Valladolid's Bankruptcy Action. Fed.

27   R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.

28   2006) (courts "may take judicial notice of court filings and other matters of public record").

1   The Court will thus proceed to consider Valladolid's appeal of the bankruptcy court's
2   summary judgment order.

3   **B. The Bankruptcy Court Correctly Determined That Issue Preclusion Was**
4   **Applicable**

5       First, the bankruptcy court presiding over the Adversary Proceeding correctly
6   decided that issue preclusion could apply to the dischargeability issue before it.  Well-
7   established law provides that issue preclusion is available in dischargeability proceedings.
8   *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("collateral estoppel principles do indeed
9   apply in discharge exception proceedings pursuant to § 523(a)"); *In re Harmon*, 250 F.3d
10   1240, 1245 (9th Cir. 2001) (same).  Upon *de novo* review, this Court concludes that the
11   bankruptcy court correctly held that issue preclusion is available in dischargeability
12   proceedings and thus correctly considered the doctrine when the Dragans raised it on
13   summary judgment. *See* Adversary Proceeding Dkt. 48 at 1–9.

14       Second, the bankruptcy court in the Adversary Proceeding properly assigned the
15   burden of demonstrating issue preclusion to the Dragans.  "The party asserting [issue
16   preclusion] has the burden of proving that all of the threshold requirements have been met."
17   *In re Honkanen*, 446 B.R. 373, 382 (9th Cir. BAP 2011) ("moving party must [pinpoint]
18   the exact issues litigated in the prior action and introduce[] a record revealing controlling
19   facts.").  Because the Dragans moved on issue preclusion, they bore the burden of proof.
20   *See id.*  The bankruptcy court properly assigned the burden of proof to the Dragans, *see*
21   Adversary Proceeding Dkt. 48 at 6, and considered whether they pinpointed portions of the
22   record that demonstrated issue preclusion. *See id.* at 6–9.  Thus, the bankruptcy court did
23   not err with respect to the burden of proof.

24       Third, the bankruptcy court identified and applied the correct legal standards for
25   issue preclusion.  "Issue preclusion bars the relitigation of issues actually adjudicated in
26   previous litigation between the same parties." *Littlejohn v. United States*, 321 F.3d 915,
27   923 (9th Cir. 2003).  Issue preclusion bars relitigation of an issue where (1) the issue is
28   identical to an issue in an earlier action, (2) the issue was actually litigated in the earlier

1   action, (3) the issue was necessary to that judgment, (4) there was a final judgment on the

2   merits in the earlier action, and (5) the parties to both actions are the same or there is privity.

3   *In re Silva*, 190 B.R. 889, 892 (9th Cir. BAP 1995); *accord Clark v. Bear Stearns & Co.,*

4   *Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (issue must be identical, actually litigated, and

5   necessarily decided); *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) (there must also be

6   privity and a full and fair opportunity to litigate the issue).  Reasonable doubts about what

7   was decided in the prior action should be resolved against the party seeking to assert

8   preclusion.  *In re Kelly*, 182 B.R. 255, 258 (9th Cir. BAP 1995).  Because the district court

9   in the Fraud Action exercised supplemental jurisdiction over the California state law fraud

10  claim, the bankruptcy court applied both California law and federal common law to

11  determine the preclusive effect of the Fraud Action and found that issue preclusion was

12  met under both doctrines.[6]  *See* Adversary Proceeding Dkt. 48 at 5–9.  The Court finds that

13  issue preclusion doctrines under state and federal common law are substantively the same

14  and the bankruptcy court applied the correct legal standards in reaching its ruling.

15      Finally, the Court will examine whether the bankruptcy court correctly applied the

16  above standards to the facts before it in determining that the decision in the Fraud Action

17  should have preclusive effect.  In his brief, Appellant does not raise any arguments about

18  the preclusive effect of the Fraud Action decision—he argues instead that the district

19  court's decision in the Fraud Action was wrong.  *See* Dkt. 4.

20  ///

21  ///

22

23

_____

24  [6] Whether federal or state issue preclusion law applies to the judgement of a federal court exercising supplemental jurisdiction over a state law claim, is an unsettled area of law. *Hayes v. Rojas,*

25  2021 WL 5356471, at *2 n.4 (E.D. Cal. Nov. 17, 2021) (describing the unsettled issue of "how to approach the res judicata analysis when the prior state-law claims were before the federal court based upon

26  supplemental" jurisdiction and collecting cases).  The bankruptcy court, therefore, appropriately analyzed the question under both and reached the same conclusion. *In re Coast Trading Co., Inc.*, 744 F.2d 686,

27  689 (9th Cir. 1984) (declining to reach a choice of law issue where the result would be the same); *In re*

28  *Yellow Cab Co.*, 212 B.R. 154, 158 n.6 (Bankr. S.D. Cal. 1997) (noting that the elements of issue preclusion under California and federal law are the same).

1   *1. The Issues are Identical*

2       The bankruptcy court correctly concluded that the first requirement of issue

3   preclusion, identity of issues, was met.  Issues are considered identical for the purpose of

4   issue preclusion where the claims are closely related and arise out of the same

5   "transactional nucleus of facts."  *See Howard v. City of Coos Bay*, 871 F.3d 1032, 1041

6   (9th Cir. 2017); *Cent. Delta Water Agency v. U.S.*, 306 F.3d 938, 952 (9th Cir. 2002).  The

7   bankruptcy court held, and this Court agrees, that the elements required under 11 U.S.C.

8   § 523(a)(2)(A) mirror the elements of fraud under California law.  *In re Zuckerman*, 613

9   B.R. 707, 714 (9th Cir. BAP 2020) (finding that actual fraud under California law is

10  identical to the elements of a § 523(a)(2)(A) action); *In re Jung Sup Lee*, 335 B.R. 130,

11  136 (9th Cir. BAP 2005) ("[t]he elements of fraud under § 523(a)(2)(A) match the elements

12  of common law fraud and of actual fraud under California law").  Because the elements for

13  both the fraud claim and the dischargeability claim are the same, and both claims arose out

14  of the same set of facts surrounding the business transactions between Valladolid and the

15  Dragans, this Court agrees with the bankruptcy court's analysis that the issues were

16  identical.

17      *2. Actually Litigated*

18      The bankruptcy court in the Adversary Proceeding properly found that the second

19  requirement for issue preclusion was met because the issue of fraud was actually litigated.

20  "[A]n issue is actually litigated when an issue is raised, contested, and submitted for

21  determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019).  Here, the Dragans

22  brought a fraud claim against Valladolid.  *See* Fraud Action Dkt. 1.  After conducting

23  discovery, the Dragans moved for summary judgment on the fraud claim and Valladolid

24  opposed the motion.  *See* Fraud Action Dkt. 101.  The Fraud Action court considered the

25  parties arguments in detail and ultimately issued a final ruling on the Dragans' fraud claim,

26  concluding that there was no genuine dispute of material fact that Valladolid had

27  committed fraud.  *See id.*  The Court agrees with the bankruptcy court that these facts

28

1   satisfy the "actually litigated" requirement and therefore, the bankruptcy court did not err

2   in concluding that this requirement was met.

3       *3. Necessarily Decided*

4       The issue of fraud was necessarily decided in the Fraud Action, satisfying the third

5   requirement for issue preclusion. An issue is necessarily decided when its resolution was

6   necessary to reach the judgment. *See, e.g.*, *In re Grenier*, 2015 WL 3622712, at *10 (9th

7   Cir. BAP June 10, 2015). The crux of the Fraud Action court's summary judgment

8   decision was the determination that Valladolid was liable for fraud against the Dragans.

9   *See* Fraud Action Dkt. 101. The Fraud Action court first found that Valladolid was liable

10  for common law fraud and then found that, because Valladolid was liable for fraud, he

11  should also be found liable on the Dragans' remaining claims. *Id.* Based on the Fraud

12  Action court's summary judgment decision, the bankruptcy court in the Adversary

13  Proceeding concluded that the issue of fraud was necessarily decided. *See* Adversary

14  Proceeding Dkt. 48. This Court agrees because the central holding of the Fraud Action

15  court's summary judgment opinion was that Valladolid committed fraud. Accordingly, the

16  bankruptcy court did not err in holding that the issue of fraud was necessarily decided.

17      *4. Final Decision on the Merits*

18      This Court also agrees with the bankruptcy court that the Fraud Action resulted in a

19  final decision on the merits of the Dragans' fraud claim, satisfying the fourth requirement

20  for issue preclusion. *See, e.g.*, *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th

21  Cir. 1992) (finding that summary judgment ruling "was a final judgment on the merits");

22  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("It is

23  certainly true that there was a final judgment on the merits [in the prior action], as the

24  district court granted the government's motion for summary judgment") (emphasis

25  omitted). Here, the Fraud Action court determined that Valladolid was liable for fraud and

26  entered summary judgment, which constitutes a final decision on the merits. *See id.*

27  Accordingly, the bankruptcy court did not err in finding that there was a final decision.

28  ///

1    *5. Same Parties*

2          The fifth requirement that the parties to both actions be the same or in privity is met

3    because the parties in the Fraud Action are the same as the parties in the Adversary

4    Proceeding.  The foregoing requirement is met where "the party against whom [issue

5    preclusion] is asserted was a party or in privity with a party at the first proceeding." *Paulo*

6    *v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (citation omitted).  Both the Dragans and

7    Valladolid were parties to the Fraud Action and to the Adversary Proceeding.  Thus, the

8    bankruptcy court did not err in finding that the fifth requirement for issue preclusion was

9    satisfied.

10         Finally, the Court also concludes that the bankruptcy court did not abuse its

11   discretion by finding that policy considerations favored the application of issue preclusion

12   in this case.  Adversary Proceeding Dkt. 48 at 9.  Here, none of the concerns that might

13   weigh against the application of issue preclusion are present.  For instance, there are no

14   circumstances that would cast doubt on the fairness of the Fraud Action, such as an

15   incomplete opportunity to litigate the issue of fraud. *See, e.g.*, *In re Palmer*, 207 F.3d at

16   568 (holding that party must have had a full and fair opportunity to litigate in the prior

17   action); *In re Yu*, 545 B.R. 633, 639 (Bankr. C.D. Cal. 2016) (discussing the presence of

18   the incentive to litigate vigorously in the prior action as a fairness concern).  Rather, the

19   bankruptcy court's application of issue preclusion in the Adversary Proceeding served the

20   central purposes of issue preclusion: to avoid relitigation of decided issues, promote

21   judicial economy, and avoid inconsistent judgments. *Maciel v. Comm'r*, 489 F.3d 1018,

22   1023 (9th Cir. 2007); *In re Lopez*, 367 B.R. 99, 104 (9th Cir. BAP 2007).  Accordingly,

23   the bankruptcy court did not abuse its discretion by holding that policy considerations

24   weighed in favor of issue preclusion.

25         The Court concludes that the bankruptcy court properly entered summary judgment

26   in favor of the Dragans on their § 523(a)(2)(A) claim on the grounds that all of the factors

27   for issue preclusion were met. The bankruptcy court in the Adversary Proceeding neither

28   erred nor abused its discretion.

1

# IV. CONCLUSION AND ORDER

2       For the reasons set out above, the Court AFFIRMS the judgment of the bankruptcy

3   court.

4

5      **IT IS SO ORDERED**.

6

7   Dated:  8/16/2022

Hon. Jinsook Ohta

8   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12